UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON ISAAC ARAUZ MEDINA,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES JANECKA et al.,<br><br>    Defendants. | Case No. 5:25-cv-03258-SB-MBK<br><br>ORDER GRANTING IN PART APPLICATION FOR A PRELIMINARY INJUNCTION [DKT. NO. 3] |

    Petitioner Aaron Arauz Medina, a Nicaraguan citizen, was arrested by U.S. border patrol officers at his workplace and is currently being detained at an immigration detention center without bond.  At the time of his detention, he was subject to a final removal order and released on supervision.  He filed a habeas-corpus petition and an application for a temporary restraining order (TRO) on December 3, 2025, seeking his immediate release from custody or other appropriate relief.  The government filed an opposition.  At the hearing on the application, the parties agreed to convert the application for a TRO into a motion for a preliminary injunction and render a final judgment.  The motion for preliminary relief is granted in part.

I.

    Petitioner, a Nicaraguan citizen, was removed from the United States in 2009 under a final order of removal.

    On November 8, 2021, he reentered the United States without inspection—allegedly to escape persecution in Nicaragua—and was apprehended by the government.  Dkt. No. 7-1 ¶ 10.  At that time, according to the declaration of a deportation officer assigned to the Los Angeles Field Office, the U.S. Customs and

Border Patrol (CBP) issued a notice of intent and decision to reinstate its prior removal order. *Id.* ¶ 12.

On November 22, 2021, he was released under an order of supervision. Dkt. No. 3 at 33–36 of 42. The supervision order specified the reason for release as follows: "Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision . . . ." *Id.* at 33 of 42. The accompanying notice of custody determination provided further information about the reason for release, stating:

> Pursuant to a review conducted to comply with requirements in Fraihat v. ICE . . . ,[1] you have been identified as having one or more of the Risk Factors identified by the district court as placing you "at heightened risk of severe illness and death upon contracting the COVID-19 virus."

*Id.* at 38 of 42.

On February 21, 2023, Petitioner filed an application for asylum and for withholding of removal, and he received work authorization while his asylum application was pending. He periodically reported to Immigrations and Customs Enforcement (ICE) as required by his order of supervision.

On October 10, 2025, Petitioner was working at a car wash in San Gabriel, California, when border patrol officers raided the premises. Petitioner showed his work permit and REAL ID card to a questioning officer and informed the officer that he had a pending asylum application. He was taken into custody and transferred to the immigration detention center in Adelanto, California.

On October 11, 2025, the government issued a second notice of intent and decision to reinstate its prior removal order. Dkt. No. 7-1 ¶ 17.

On November 20, 2025, an asylum officer interviewed Petitioner about his expressed fear of persecution and determined that he had no reasonable fear. *Id.*

---

[1] The district court in *Fraihat v. U.S. Immigration and Customs Enforcement* issued a preliminary injunction in a class action requiring the government to "make timely custody determinations for detainees" with risk factors rendering them vulnerable to COVID-19, "regardless of whether they have submitted requests for bond or parole . . . ." 445 F. Supp. 3d 709, 751 (C.D. Cal. Apr. 20, 2020).

¶¶ 18–19.  On November 25, Petitioner requested review of the decision by an immigration judge (IJ).  *Id.* ¶ 20.  On November 28, the IJ found that Petitioner had not established a reasonable possibility of either being persecuted based on a protected ground or being tortured in Nicaragua if removed.  *Id.* ¶ 21.  Petitioner filed an appeal and motion to stay in the Ninth Circuit.  *Id.* ¶ 22.[2]

    Petitioner remains in custody.

## II.

    To obtain preliminary relief, a plaintiff must establish:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury, (3) that the balance of hardships tips in his favor, and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (noting that the TRO and preliminary injunction standards are substantially the same).  In the Ninth Circuit, a preliminary injunction may issue where there are "serious questions going to the merits"—a "lesser showing than likelihood of success on the merits"—and a "balance of hardships that tips sharply toward the plaintiff," provided the other elements of the *Winter* test are also met.  *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (cleaned up).  "A preliminary injunction is an extraordinary remedy never awarded as of right," but rather only "upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22, 24.

---

[2] On December 4, 2025—the day after the petition was filed—the Ninth Circuit entered a temporary stay of removal pending its consideration of the stay motion on the merits.  *See* Ninth Cir. G.O. 6.4(c) (describing the procedure for merits consideration).  At the hearing, Petitioner argued that his detention is thus governed by § 1226(a), rather than § 1231(a), under Ninth Circuit law.  *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008) ("hold[ing] that § 1231(a) does not provide authority to detain an alien whose removal order is administratively final, but whose removal has been stayed by a court of appeals pending its disposition of his petition for review").  *Id.*  After the Court indicated that supplemental briefing might be warranted on this issue, Petitioner withdrew the argument to allow him to expeditiously pursue the relief granted in the Court's tentative (and now final) order.

III.

Petitioner asserts several claims arising out of his detention in immigration custody. His principal argument is that the government violated his statutory and regulatory rights in summarily revoking his supervised release without due process.

A.

Petitioner contends that he is entitled to a bond hearing under § 1226(a) and its implementing regulations. "Section 1226 generally governs the process of arresting and detaining [aliens who were inadmissible at the time of entry or who were convicted of specified crimes since admission] pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). This provision allows a detainee to seek bond "at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

But "[o]nce an alien has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C. § 1231(a)." *Id.*; *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("[Section] 1231(a) . . . governs the detention, release, and removal of individuals 'ordered removed.'"). Under § 1231:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).[3] Section 1231—unlike § 1226—does not "on [its] face" provide a right to a bond hearing. *Rodriguez Diaz*, 53 F.4th at 1198 (noting that "neither § 1225(b) nor § 1231(a) on their face provides for bond hearings").

Under § 1231, a noncitizen's removal order "is reinstated" when he reenters the country unlawfully. "The only factual predicates for reinstatement are that (1) petitioner is an alien, (2) who was subject to a prior removal order, and (3) who

---

[3] For consistency and clarity, this Order uses "alien" as that term appears in the relevant statutes and regulations.

illegally reentered the United States." *Morales de Soto v. Lynch*, 824 F.3d 822, 825 (9th Cir. 2016) (cleaned up). "In most cases, immigration officers make such reinstatement decisions without a hearing before an immigration judge." *Id.* Petitioner undisputedly satisfies each of these requirements, and the government has submitted uncontradicted evidence that CBP notified him of its decision to reinstate the prior removal order on November 8, 2021, and for a second time on October 11, 2025.

In response, Petitioner argues that § 1231 is inapplicable because the government, consistent with its prosecutorial discretion, elected not to reinstate his removal order. *See id.* (noting that "[r]einstatement of removal is neither 'automatic' nor 'obligatory'"). He relies on two facts in support. First, he notes that the notice of custody determination invokes the agency's release authority under § 1226. Dkt. No. 3 at 39 of 42 (referring "to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations"). But that accompanying supervised-release order references his final removal order, cites the supervised-release provision in § 1231, and invokes the *Fraihat* injunction as requiring Petitioner's release. Dkt. No. 3 at 33 of 42 (noting October 20, 2009 as date of final removal order); *id.* at 40 of 42 (quoting § 1231(a)(3) and warning Petitioner that failing to comply with terms of supervised release set forth in § 1231 may result in fine or imprisonment).[4] Second, Petitioner notes that the agency considered his asylum application, which is inconsistent with his removal under § 1231. *See* 8 U.S.C. § 1231(a)(5) (stating that "the alien is not eligible and may not apply for any relief under this chapter" when his prior removal order is reinstated). While these two facts may raise questions about the agency's actions, they do not demonstrate that the government decided not to reinstate the prior removal order when it has provided unrebutted proof of reinstatement. *See* Dkt. No. 7-1 ¶¶ 12, 17.

Consequently, Petitioner fails to demonstrate likelihood of success on the merits of his § 1226 claim.

B.

Petitioner next claims that the government's revocation of his supervised release violates his due-process rights. Although "the Due Process Clause applies

---

[4] Petitioner himself appears at times to recognize the applicability of § 1231. *See, e.g.*, Dkt. No. 3 at 19–20 of 42 (arguing that the government violated § 1231's implementing regulations in revoking Petitioner's supervised release).

5

to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), "[t]he recognized liberty interests of U.S. citizens and aliens are not coextensive." *Rodriguez Diaz*, 53 F.4th at 1206. Petitioner does not challenge the length of his detention under *Zadvydas*. 533 U.S. at 701 (establishing six months as presumptively reasonable following the 90-day removal period). Rather, he contends that the government failed to comply with the applicable regulations in revoking his release.

An inadmissible alien under a final removal order is subject to mandatory detention during the 90-day removal period. 8 U.S.C. § 1231(a)(2); *see* 8 C.F.R. § 241.3. After the removal period, if released, "the alien . . . shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *see* 8 C.F.R. § 241.4. Release may subsequently be revoked. 8 C.F.R. § 241.4(l). As relevant here, "[r]elease may be revoked in the exercise of discretion when, in the opinion of the revoking official: (i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.* § 241.4(l)(2).

Although the government argues that its discretion to revoke release is broad, it does not challenge the fact that it must provide the process required by § 241.4(l). Dkt. No. 7 at 3–4 (arguing that Petitioner was afforded the process due under that section). Section 241.4(l)(1) requires: (1) notice "of the reasons for revocation of his or her release" and (2) "an initial informal interview promptly" after redetention "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).[5] Petitioner alleges in his verified petition that "the deportation officer who 'revoked' his order of supervised release provided no reason for the revocation" and that "[he] was not interviewed" so that he could provide a response. Dkt. No. 3 at 8 of 42. The

---

[5] The government does not dispute that the procedural protections in subsection (l)(1), which govern revocation for violations of release conditions, also apply to revocations under subsection (l)(2). *See Huang v. Albarran*, No. 1:25-CV-01308, 2025 WL 2986885, at *5 n.2 (E.D. Cal. Oct. 23, 2025) (collecting cases finding the notice and interview requirements "apply to anyone whose supervision has been revoked pursuant to [(l)(1) or (l)(2)]"). The Court therefore need not address the issue.

6

government has provided no contrary evidence. Dkt. No. 7 at 14–16 (declaration of deportation officer recounting the relevant procedural facts).

Accordingly, he demonstrates a likelihood of success on the merits of his procedural due process claim.[6]

IV.

To obtain preliminary relief, Petitioner must also show that the remaining three factors—irreparable harm, balance of hardships, and the public interest—weigh in his favor. When, as here, the government opposes such relief, the balance of equities and public interest merge. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

"[T]he deprivation of constitutional rights unquestionably constitutes irreparable injury," *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017), and Petitioner provides evidence of his deteriorating health and the harmful impact of separation from his family, including his two young children. Dkt. No. 3 at 31 of 42. Although the government has a strong interest in enforcing the immigration laws, *see Rodriguez v. Robbins*, 715 F.3d 1127, 1145–46 (9th Cir. 2013), its interest is not impaired when it is required to do so consistent with its own regulations. The balance of equities and hardship thus weighs in Petitioner's favor.

Petitioner asks for his release or alternatively for the process due under the regulations. It is well established that an "injunction must be tailored to remedy the specific harm alleged." *Galvez v. Jaddou*, 52 F.4th 821, 834 (9th Cir. 2022) (cleaned up). Here, the government has broad authority to revoke release of an individual who is subject to a final order of removal. Given that authority and the

---

[6] Petitioner has not shown that he is likely to prevail on his claim that the revoking official lacked authority to revoke his release. *See* 8 C.F.R. § 241.4(c)(4) (authorizing revocation by "any person . . . designated in writing by the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, or the district director"); *id*. § 241.4(h)(5) (permitting further delegation of custody-decision authority to field office staff). Nor is he likely to succeed on his claim that the government failed to comply with § 241.13, which applies when the alien provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(a).

nature of the violation in this case, the Court finds that granting the alternative request strikes the proper balance here.

     Accordingly, the government shall provide the process required by § 241.4(l) within 48 hours of this Order. A final judgment will be entered separately.

Date: December 16, 2025

                                               Stanley Blumenfeld, Jr.
                                               United States District Judge